[Cite as *100980*, 2014-Ohio-4925.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100980**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CLINTON SCOTT**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-576163-A

**BEFORE:** McCormack, J., Boyle, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 6, 2014

**ATTORNEY FOR APPELLANT**

Donald Tittle
1276 West 3rd Street, #419
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Steven N. Szelagiewicz
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1}    Clinton Scott appeals from his conviction of aggravated burglary and aggravated menacing.   After a careful review of the record, we affirm his conviction but remand the case to the trial court for a calculation of jail-time credit.

{¶2}  On July 11, 2013, sometime after midnight, Scott kicked in the door of his ex-girlfriend, Tiara Bailey's ("Bailey") home and "tussled" with both her and a man who was in her house.   The police retrieved a gun from the scene that Bailey said Scott had in his hand. From this incident, Scott was charged with aggravated burglary (with one- and three-year firearm specifications, a notice of prior conviction, and a repeat violent offender specification), assault (with a forfeiture of property specification), two counts of aggravated menacing (with a forfeiture of property specification), domestic violence, and having a weapon while under disability (with one- and three-year firearm specifications and a forfeiture of property specification).

{¶3} After several pretrial hearings before the trial court, the matter went to a jury trial. The state presented five witnesses, and the defense presented four, including Scott himself.

Victim's Testimony

{¶4} Tiara   Bailey knew Scott since the 9th grade.   They lived together off and on over the course of many years, and they have a son together.   The relationship, however, was rocky. Two-and-a-half years before the incident, the two moved into a house on Rosewood Avenue in Cleveland.   Scott lived there until December 2012.   According to Bailey's testimony, she asked him to leave after they got into an altercation and he "pulled a gun out on" her.   A month later, in January 2013, she changed the locks on the house.

{¶5} Bailey testified that on July 10, 2013, Scott called her in the afternoon to say he wanted to come over to get his TV from the house.   He did not specify a day or time, however.

That night, a friend, "Marcus," was in her house. Around midnight, she heard a commotion outside her house. She looked out and saw Scott's truck parked in the middle of the street. Scott was yelling that she "better open the door or [she's] going to be sorry." Scott then started to kick her back door. Bailey called 911.

{¶6} While Bailey was on the phone with the dispatcher, Scott kicked in the door. He shoved Bailey and made his way upstairs, heading to her bedroom. Scott saw Marcus in the room, and the two tussled, with Scott holding a gun in his hand. Marcus broke loose and ran downstairs and out the back door. During this entire time, Bailey was on the phone with the 911 dispatcher; she told the dispatcher Scott had a gun.

{¶7} Scott ran outside as well. He first ran across the street, but then ran back to the house. Scott and Bailey started to argue. Scott said, "You're not supposed to have another nigger in this house." Scott tried to hop the fence between Bailey's and a neighbor's house to chase after Marcus. Bailey struggled with him to prevent him. At this point, the police arrived, and Scott quickly disposed of his gun.

{¶8} Bailey testified she feared for her life on the night of the incident.

The Officers' Testimony

{¶9} Officer Rick Stone and Officer Ronald Clayton responded to the scene. They saw Scott and Bailey wrestling with each other in her driveway when they arrived. When Officer Clayton shined the spotlight on Scott, he ran toward the backyard. The officers later retrieved a firearm from that area. The officers also took photographs of a boot print on the back door and broken doorjambs.

{¶10} The gun recovered by the officers was submitted by the state as an exhibit. Bailey identified it in court as the gun disposed of by Scott. She also identified it as the gun Scott

displayed on the prior occasion. Kristen Koeth, a forensic lab technician, testified the gun was operable. The state's exhibits also included photographs of the boot print on the door and damaged doorjamb. In addition, Bailey's 911 call was played for the jury.

### Testimony for the Defense

{¶11} Bailey's neighbor from across the street, Tykeisha Cage, testified for Scott. She testified Scott lived across the street and she had seen him working on the house. She saw him moving furniture from the house a few days prior to the incident. On the night of the incident, she saw Scott pull up, go up to Bailey's front door, and try to use his keys to open the front door. The keys did not work, and he went to the back door. Somehow he got inside the house. He and Bailey then came out and argued in the driveway. Bailey, screaming and yelling, pushed Scott and told him he was not supposed to be there. She did not see Scott touching Bailey or holding a gun.

{¶12} Scott's grandmother, Delores Walton, testified Bailey and Scott had a volatile relationship. Bailey kicked him out of the home they shared several times. Walton signed the purchase agreement for a stove and refrigerator for the Rosewood home.

{¶13} Clinton Scott, Sr., Scott's father, testified that he helped his son and Bailey move into the Rosewood home. He believed his son was still living in the home in July 2013, although he acknowledged he knew the two had broken up.

{¶14} Scott testified on his own behalf. He gave a slightly different account of the event. He moved out of the Rosewood home in December 2012, but his tools and some clothing were still in the home. He had keys to the house, but would typically call Bailey first before he came over. On July 10, 2013, he called Bailey in the afternoon to tell her he was coming over to get some of his belongings. Usually he got off his shift at 5:00 a.m. in the morning, but that night

he got off early, around midnight. He tried his keys on both the front and back door, but the locks had been changed, to his surprise. He kicked the back door, and it broke open when he rammed it with his shoulder.

{¶15} Scott steadfastly denied having a gun. He claimed both the boot print on the door and the gun were planted and he was "railroaded."

{¶16} The jury found Scott guilty of aggravated burglary, aggravated menacing, and having a weapon while under disability, but not guilty of assault or domestic violence. He was sentenced to three years on the firearm specification, consecutive to (1) six years on aggravated burglary, and (2) one year on having a weapon while under disability, for a total of ten years.

{¶17} On appeal, Scott's appointed appellate counsel filed a brief, raising three assignments of error. Scott then retained another counsel and asked for leave to file an amended brief. We treated the request as a motion by retained counsel to file a supplemental brief and granted the request. The retained counsel raises four supplemental assignments of error. The combined seven assignments of error state:

> First Assignment of Error: It was error to exclude Clinton Scott from the courtroom due to his ongoing expression of his frustration that his trial counsel is silent thereby objecting to the state's closing argument, absent manifesting violence or a threat.
>
> Second Assignment of Error: Plain error was committed by both the trial court and defense counsel, when the trial court neglected to compute jail time credit.
>
> Third Assignment of Error: Counsel was ineffective in violation of the sixth amendment, to Clinton Scott's detriment.
>
> First Supplemental Assignment of Error: The trial court's failure to hold a competency hearing denied appellant of due process of law.
>
> Second Supplemental Assignment of Error: Appellant was denied effective assistance of counsel when his trial counsel failed to obtain an independent evaluation of defendant's competency.

Third Supplemental Assignment of Error: Appellant was denied his constitutional right to a fair trial by the cumulative effect of counsel's errors.

Fourth Supplemental Assignment of Error: Appellant's conviction for aggravated burglary was not supported by sufficient evidence.

**{¶18}** For ease of discussion, we address these assignments of error out of order.

## Competency Hearing

**{¶19}** Under the first supplemental assignment of error, Scott claims the trial court should have held a hearing to determine his competency to stand trial.

**{¶20}** The record reflects that before trial, the court held several pretrial hearings on this criminal matter: September 24, 2013, October 31, 2013, and November 13, 2013. On the day of trial, December 9, 2013, two more pretrials were held before the voir dire of the jury was undertaken. During these pretrial proceedings, Scott continuously expressed his dissatisfaction with his trial counsel's performance. The transcript shows that, after he fired his first trial counsel, the court appointed a second counsel for him. Scott quickly became unhappy with his second counsel too. The court, however, refused to appoint a third counsel.

**{¶21}** Also, Scott repeatedly refused to wear civilian clothing while in court and constantly interrupted the trial court as the court tried to explain the seriousness of the charges against him. In the October 31 pretrial hearing, after Scott persisted in disruptive conduct, the trial court asked him if he was thinking clearly about the case. Scott assured the court he was.

**{¶22}** The trial was set for November 13, 2013. On that day, Scott's counsel reported to the trial court that Scott had been cooperative and provided him with a list of witnesses for his defense two days before. Because of the short notice of the defense's witness list, the trial was continued. On this occasion, the trial court again addressed Scott personally and attempted to

ascertain if Scott understood the charges against him. The trial court noted that it knew Scott well because it was involved in Scott's prior felony cases and it was also involved in Scott's probation matter.

{¶23} On December 9, 2013, the day of the rescheduled trial, before the voir dire of the jury commenced, Scott again acted disruptively. The trial court asked Scott if he would like have a psychiatric evaluation. The court inquired if there was any mental or emotional disorder that caused him to behave destructively. The court indicated it was willing to refer Scott to the court's psychiatric clinic and to continue the trial pending the evaluation. Scott stated he was in a right state of mind and did not need the evaluation. At this point, his counsel made a request for a competency hearing for the record. The transcript reflects the following dialogue:

> [DEFENSE COUNSEL]: Well, and you did touch on the issue, Your Honor. I would ask for a competency evaluation just as a matter of record because of the destructive nature I've seen in my client. He's been unable to assist me in the preparation of his defense in a reasonable, proper way. So as a matter of record, I would ask for a competency hearing.
>
> THE COURT: Clinton, what's your thought?
>
> THE DEFENDANT: I didn't hear that. Could you say it again?
>
> THE COURT: Well, your attorney thought that it might be a good idea for us to have you examined by a psychiatrist. What do you think?
>
> THE DEFENDANT: I don't think so. He just told you I gave him everything he needs on that sheet of paper. I wrote all my witnesses down and everything he needs. So how could I not be helping him in my defense? I don't understand that. You just said it.
>
> THE COURT: All right. Look. Here's my thought. I appreciate the motion
>
> of the defense attorney, but I'm going to overrule it at this point in time. I have
>
> had the opportunity to have a number of colloquies with the defendant in this
>
> case, and I don't think his problem is mental health. I think his problem is

attitudinal. I don't believe he is incompetent by any means to stand trial. He

seems like a very bright guy. He just seems to be very upset about the identity of

the person his girlfriend was with. I don't think that's a basis for a psychiatric

referral or for continuing the case. So we'll go forward with the trial at 1:15

[p.m].

{¶24} Further commenting on Scott's ability to assist in his defense, the court stated:

THE COURT: [H]ere's what my experience tells me. It isn't so much the attorney, it isn't so much the case, it's Clinton. You know, who's to say Clinton is going cooperate with the next person.

* * *

Look, this case could be tried by any one of a hundred different attorneys and any one of 34 different judges. It's not about personalities, other than Clinton's. And I'm just saying, hey, Clinton, look, you seem very adamant and steadfast in your innocence, and I'm cool with that.

My job is limited to giving you the fairest of possible trials, which is why I'm

telling you, I would like you to cooperate with me because it's really prejudicial

for you to be mouthing off and dressing in orange and sitting in cuffs and giving

the judge a hard time, and fighting with your attorney * * *.

{¶25} A criminal defendant is presumed to be competent to stand trial. *State v.*

*Williams*, 99 Ohio St.3d 439, 451, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 62, citing R.C.

2945.37(G). The test of a defendant's competency to stand trial is "whether he has sufficient

present ability to consult with his lawyer with a reasonable degree of rational understanding —

and whether he has a rational as well as factual understanding of the proceedings against him."

*State v. Rahman*, 23 Ohio St.3d 146, 156, 492 N.E.2d 401 (1986). One who lacks the capacity

to understand the nature and object of the proceedings against him, to consult with counsel, and

to assist in preparing his defense may not stand trial. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155, citing *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

{¶26} R.C. 2945.37 protects a defendant's right not to be tried or convicted while incompetent, which is a fundamental due process right. *State v. Were*, 94 Ohio St.3d 173, 174, 2002-Ohio-481, 761 N.E.2d 591. Pursuant to R.C. 2945.37(B), if the issue of the defendant's competence to stand trial is raised "before the trial has commenced," the court is to hold a hearing on the issue; if the issue is raised "after the trial has commenced," the court "shall hold a hearing on the issue only for good cause shown." *See also State v. Spirko*, 59 Ohio St.3d 1, 20, 570 N.E.2d 229 (1991) (pursuant to R.C. 2945.37, if the issue of competency is raised "during trial," the court must hold a hearing only for good cause shown).

{¶27} Furthermore, while the trial court must conduct a hearing if the issue of competency is raised prior to trial, the trial court is not mandated to order a competency evaluation. Rather, the decision to order a competency evaluation is within the discretion of the trial court. *State v. Johnson,* 9th Dist. Summit No. 25620, 2011-Ohio-6417, ¶ 12, citing R.C. 2945.371(A) (if the issue of a defendant's competence to stand trial is raised, the court "may" order one or more evaluations of the defendant's present mental condition).

{¶28} Here, the record reflects no request was made before the day of trial to evaluate the defendant's competency. Rather, when the trial court expressed some concern over the defendant's mental health moments before the voir dire, the defense counsel, for the first time, requested a competency hearing.

**{¶29}** Thus, the initial question is whether the request, made on the day of trial and immediately before the jury voir dire, should be construed as a request before or after the trial "has commenced," for purposes of R.C. 2945.37.

**{¶30}** Our research indicates the courts have treated a competency request made before the jury voir dire as a request *prior to* trial and, as such, warranting a hearing. *State v. Austin*, 7th Dist. Mahoning No. 09MA167, 2010-Ohio-6583, citing *State v. Murphy*, 173 Ohio App.3d 221, 2007-Ohio-4535, 30 N.E.2d 1034 (12th Dist.).

**{¶31}** However, such a hearing could take place immediately. In *Austin*, as in the instant case, immediately after the request was made, the trial court provided its analysis and made a finding that the defendant was competent to stand trial.

**{¶32}** The Seventh District, upon an examination of the transcript, determined that the trial court's analysis and finding constituted a hearing for purposes of R.C. 2945.37. The appellate court noted that the defendant was represented by counsel and the trial court did not prevent any evidence or argument concerning competency from being introduced. *Austin* at ¶ 33. The appellate court reasoned that nothing in the statute prevents the hearing from taking place on the same day as the request. *Id.* at ¶ 35.

**{¶33}** Here, as in *Austin*, after the defense counsel requested a competency hearing, the trial court gave an analysis and found Scott to be competent to stand trial. Although it did not order a psychological evaluation, it was not required to.

**{¶34}** The trial courts, as the ones "'who see and hear what goes on in the courtroom,'" are to be afforded deference on the competency issue. *Williams,* 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, at ¶ 62, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298. *See also State v. Ahmed*, 103 Ohio St.3d 27, 37-38, 2004-Ohio-4190, 813 N.E.2d

637. In this case, we note that the trial court was familiar with Scott, having presided over his prior cases and, in the instant case, engaged in very extensive colloquy with the defendant in three separate pretrial hearing.

{¶35} "A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). The record before us showed Scott understood the charges against him, in fact arguing at one point with the trial court that his offense should be breaking and entering and not aggravated burglary. He asked for a private investigator, sought the record from the utilities company regarding the Rosewood house, provided his counsel with a list of witnesses, and made a decision to testify to give his side of the story. Indeed, the record supports the trial court's observation that the defendant's conduct exhibited a problem of attitude, not incompetency to stand trial. An uncooperative attitude on the part of an accused does not rise to the level of behavior necessary to mandate a competency hearing. *State v. Stacker*, 6th Dist. Lucas No. L-88-159, 1989 Ohio App. LEXIS 3953 (Oct. 20, 1989). Having reviewed the record, we conclude that the trial court satisfied the requirement of R.C. 2945.37 and its finding is supported by the record. The first supplemental assignment of error is without merit.

### Defendant's Removal From the Courtroom

{¶36} Scott argues that the trial court improperly removed him from the closing argument, in violation of due process rights.

{¶37} In Ohio, a criminal defendant's right to be present in every state of the trial is embodied in Crim.R. 43(A). *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323. Crim.R. 43, however, allows the criminal defendant displaying disruptive conduct to be excluded.

Crim.R. 43(B) states: "Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence, the hearing or trial may proceed in the defendant's absence or by remote contemporaneous video * * *."

{¶38} Over the course of this criminal matter, Scott displayed a pattern of constantly interrupting and speaking over the trial court. He was repeatedly warned if he engaged in similar misconduct during trial, he would be removed. The jury trial proceeded without incident until the closing argument. Prior to closing arguments and outside the presence of the jury, Scott became agitated and repeatedly interrupted the court. During the state's closing argument, Scott had an outburst and the court decided to remove him from the courtroom. The closing argument continued without Scott's presence in the courtroom. He watched the remainder of the closing argument from the county jail by video. The trial transcript reflects the following regarding this incident:

> [THE PROSECUTOR:] * * * But everything's a setup. The police set him up with the gun. Marcus, or who he knows it is, set him up with the footprint and the gun. Tiara set him up, she let him come over so she could call the police. It's all a setup. It's not about — this case isn't about what other people have done. This is about what he did. We would not be here if he didn't break down that door. He didn't have permission to be there. He may have had keys. At some point they did agree, yeah, we lived together, but she changed the lock. The minute she changed the lock, he doesn't have permission to be there. He doesn't have the right to be in that home, she does. She's on the lease. She pays the rent. Just because your name may be on the utilities —
>
> THE DEFENDANT: Maybe, she said —
>
> [THE PROSECUTOR] — doesn't give you the right to —
>
> THE COURT: Excuse me. Excuse me.
>
> THE DEFENDANT: I object, man. I object to all of that.

THE COURT: Clinton —

THE DEFENDANT: You forgetting some things. She admitted that I was paying bills there. She admitted that, too.

THE COURT: Okay. We're going to take a short recess.

THE DEFENDANT: Why aren't you doing this? My lawyer ain't speaking up. Come on, man. You got to prove a lot of stuff. Follow the law. * * *
(Thereupon, the jury was excused from the courtroom and the following was held:)

THE COURT: I think at this point, you know, the record is pretty clear, we've had some outbursts from this defendant that resulted in the Court admonishing him and issuing a number of warnings about his behavior, which included trying the case in absentia if he continued these outbursts.

So the record is clear, he has now disrupted the court during a critical phase of this trial. He does not, at this point, seem to be showing any willingness to cooperate. So regrettably we'll have to continue the trial without his presence.

He'll remain in the holding cell and we'll attempt to bring him in here for the verdict in the case. But at this point, he'll have to be cuffed and in leg irons.

So at this point, the Court will no longer extend the courtesy to him because of the security threat he poses to the jury.

[DEFENSE COUNSEL]: Your Honor, just for the record. I move for a mistrial, the jury has seen this outburst and it does prejudice his case, and so as a matter of record I would ask for a mistrial.

THE COURT: All right. Well, obviously this continuing problem has been caused by the defendant's behavior and his willful violation of court orders and instructions, and I don't think we will permit him to benefit by declaring a mistrial at this point. We're going to go forward in the trial. * * *

{¶39} Our reading of the record in this case reflects that the court displayed a great deal of patience and caution in dealing with Scott's difficult behaviors in the court proceedings. It appears, however, that Scott would not comply with the court's repeated admonitions because he believed that he was being "railroaded." "A defendant may lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive

behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Applying Allen, we conclude the trial court's removal of Scott from the courtroom during the closing argument was justified.

{¶40} The first assignment of error is without merit.

## Ineffective Assistance of Counsel

{¶41} The remaining assignments of error concern the trial counsel's performance. In order to prevail on the ineffective assistance of counsel claim, Scott must show (1) deficient performance by counsel, i.e., performance that fell below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that counsel made errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

{¶42} In his third assignment of error, Scott claims his trial counsel was ineffective in his cross-examination of his main accuser, Bailey. A review of the portion of the examination complained of shows his counsel engaged in a long line of questioning in an attempt to elicit testimony from Bailey showing that the two indeed had a long-term relationship and that Bailey was not injured in their tussling. Counsel's questions clearly fall within normal trial tactics. The record does not demonstrate deficient counsel performance or prejudice to the defendant. The third assignment of error lacks merit.

{¶43} In his second supplemental assignment of error, Scott claims his trial counsel was ineffective in failing to obtain an independent evaluation of his competency. We have addressed

extensively the competency issue in the foregoing.  His trial counsel cannot be faulted for not requesting a competency evaluation when such a hearing was not warranted by the record.   The second supplemental assignment of error is overruled.

{¶44} In his third supplemental assignment of error, Scott claims the cumulative errors committed by his trial counsel deprived him of a fair trial. Generally, under the "cumulative error" doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of a fair trial even though none of the errors singularly rises to the level of prejudicial error.  *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.  However, when an appellant raises a claim of trial counsel's cumulative errors, the Supreme Court of Ohio cautioned that if none of the individual claims of ineffective assistance had merit, the appellant could not  establish an entitlement to relief simply by joining those claims together.  *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 173.

{¶45} Under this assignment of error, Scott alleges several errors by his trial counsel. First, he complains counsel's voir dire of the jury was inadequate.   "'The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked.'"  *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 199, quoting *State v. Evans*, 63 Ohio St.3d 231, 247, 586 N.E.2d 1042 (1992).   Our review of the portion of the transcript does not reveal performance below an objective standard of reasonable representation.

{¶46} Second, Scott points to counsel's failure to object when the prosecutor appeared to be improperly bolstering the victim Bailey's credibility by asking Officer Stone whether Bailey

reacted the same way as other burglary victims Stone had encountered. The transcript reflects that the trial court sua sponte stopped this line of questioning. Therefore, no prejudice resulted.

{¶47} Third, Scott complains that his counsel asked him about this past conviction during his direct examination of him. As a prior criminal history can be used to impeach the credibility of a defendant who testifies, it is common trial tactics to have the defendant testify about his or her criminal past during the direct examination. The transcript shows that counsel's questions allowed Scott to minimize his involvement in a prior robbery case and to explain that he sold drugs to support his family. We do not perceive any deficient performance.

{¶48} Fourth, Scott complains his trial counsel remarked at closing that Scott testified against counsel's advice, which, Scott argues, suggested his counsel did not believe his own client. A review of the transcript shows his counsel made the comment to emphasize Scott's desire to tell his side of the story. We do not perceive any error or prejudicial effect in the remark.

{¶49} Because we do not find any instances wherein Scott was deprived of the effective assistance of counsel pursuant to *Strickland*, the cumulative error doctrine does not apply. *Mammone*, 139 Ohio St.3d at 504, 2014-Ohio-1942, 13 N.E.3d 1051. The third supplemental assignment of error is overruled.

## Sufficiency

{¶50} In his fourth supplemental assignment of error, Scott argues his conviction of aggravated burglary is not supported by sufficient evidence.

{¶51} When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v.*

*Jenks*, 61 Ohio St.3d 259, 574 N.E.2d492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶52} To convict Scott of aggravated burglary, the state must produce evidence to show that he, by force, stealth, or deception, trespassed in an occupied structure, with a purpose to commit a criminal offense, while having a deadly weapon. R.C. 2911.11.

{¶53} The state produced evidence to show that Scott broke down Bailey's door and entered her home without permission while having a gun in his possession. The state's witnesses' testimony, that he fought with Bailey and the male in her home, causing him to run from the house, all the while having a gun in his possession, constituted evidence that he entered the dwelling with an intent to commit assault, domestic violence, or aggravated menacing. In a sufficiency review, we are not to assess whether the state's evidence is to be believed, but rather, whether, if believed, the evidence support a conviction. Having reviewed the evidence, we conclude the evidence in this case is sufficient for a conviction of aggravated robbery. The fourth supplemental assignment of error is without merit.

{¶54} Finally, in his second assignment of error, Scott contends the trial court failed to compute jail-time credit. The state concedes the error. This assignment of error is sustained.

{¶55} Conviction is affirmed. Case remanded for a calculation of jail-time credit.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

TIM McCORMACK, JUDGE

MARY J. BOYLE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR