[Cite as *State v. Hill*, 2018-Ohio-3901.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| FREDERICK MARK HILL, | : | Case No. 2017CA00183 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No. 2017-
CR-0700

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     September 24, 2018

APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

JOHN D. FERRERO     GEORGE URBAN
Prosecuting Attorney     116 Cleveland Ave NW, Suite 808
Canton, Ohio 44702

By: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1} Defendant-appellant Frederick Hill appeals his conviction and sentence from the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On April 21, 2017, the Stark County Grand Jury indicted appellant on one count (Count One) of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the first degree, one count (Count Two) of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(g), a felony of the second degree, one count (Count Three) of illegal cultivation of marijuana in violation of R.C. 2925.04(A)(C)(5)(f), a felony of the second degree, one count (Count Four) of trafficking in marijuana in violation of R.C. 2925.03(A)(2)(C)(3)(g), a felony of the second degree, one count (Count Five) of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3)(C)(2), a felony of the third degree, and one count (Count Six) of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(A) and/or (B), a felony of the fourth degree. The felonious assault count included a firearm specification pursuant to R.C. 2941.145 , a discharging a firearm from a motor vehicle specification pursuant to R.C. 2941.146 and a firearm specification pursuant to R.C. 2941.1412, which prohibits discharging a firearm at a peace officer or corrections officer. At his arraignment on April 28, 2017, appellant entered a plea of not guilty to the charges.

{¶3} Thereafter, a jury trial commenced on August 29, 2017. The following testimony was adduced at the trial.

{¶4} On March 20, 2017, Detective Jesse Gambs of the Canton Police Department's Special Investigations Unit was assigned to investigate a possible

marijuana grow operation located in a commercial warehouse at 1805 Allen Avenue SE in Canton, Ohio. He testified that he began his investigation by obtaining the electric records for that location for the past two years since growing marijuana takes a lot of electricity. The electric bill was in the name of Price is Right Auto Sales, LLC which was registered in the name of Frederick M. Hill of Barberton, Ohio. Detective Gambs testified that he next obtained a search warrant for a thermal imaging of the building. The result was inconclusive. Detective Gambs and another detective knocked on the doors at the property on April 12, 2017. No one answered, but they heard a dog inside. Detective Gambs testified that upon approaching the door on the southwest side, he could detect the smell of growing marijuana.

{¶5} After obtaining a search warrant for the location, on April 12, 2017 at approximately 3:00 p.m., the Detective along with other officers forced entry into the building after no one responded to knocking on the door. No one was present in the building but the officers located a pit bull type of dog. They were able to corral the dog into an office room and then called the Humane Society. The officers then began searching and inventorying the contents of the building and were at the warehouse for over seven hours. They located a marijuana growing operation inside the building that included plants as tall as six feet tall as well as smaller plants in the earlier stages of development. The officers also located fans, air conditioning units, fluorescent lights, discarded empty bottles, gloves, a drying rack hanging from the ceiling with marijuana hanging on it, and chemicals used in a marijuana grow operation. The warehouse also contained a FoodSaver machine allegedly used in packaging the drugs.

**{¶6}** The officers collected a total of seventeen trash bags of marijuana totaling over 62,000 grams. They also collected the bottles and gloves and sent them for DNA testing.

**{¶7}** After the officers finished their search, they left a copy of the inventory and search warrant on a table inside the main room. They also left a note asking appellant to call Detective Gambs. The note was left on a door of one of the grow rooms inside the building. The note said "[S]orry we missed you. Can't wait to meet in person, Please call me" with the number of the office phone. Trial Transcript at 244.

**{¶8}** Deputy Sheriff Jarrod Blanc of the Stark County Sheriff's Department worked out at the gym located next door to the grow operation. He testified that he was contacted by Detective Gambs about the possible grow operation and had conducted the thermal imaging scan of the building as part of the investigation. He testified that he used the gym about four times a week at approximately 6:30 a.m. or 7:30 a.m. and that he had seen an orange Dodge Ram parked in front of the warehouse on one occasion.

**{¶9}** Deputy Blanc testified that, on April 12, 2017, he went to the gym after work and that, before going to the gym, he was aware that a search warrant was being executed at 1805 Allen because Detective Gambs had told him that they were in the process of obtaining a search warrant. Deputy Blanc testified that he spoke with Detective Gambs and other officers on the scene for about two minutes and then returned to the gym to work out. When he was leaving the gym at approxiamley 10:45 p.m. in a spare van belonging to the Metro unit that was not a police vehicle and had no identifying markings, lights or sirens, he noticed the orange Dodge Ram parked near the southwest corner of the building. At the time he was wearing his gym shorts. The front driver's door

was open and the headlights were on. As he continued driving northbound on Allen Avenue, Deputy Blanc sent Detective Gambs a text message alerting him that he had seen the Dodge Ram at the building and was going to conduct surveillance. Deputy Blanc parked in a parking lot a quarter mile away so that he could observe the Dodge Ram. At the time, his firearm was in his duffel bag behind the seat. Deputy Blanc testified that the Dodge Ram drove right past him and stopped. A white male then exited the Dodge Ram holding a firearm.

{¶10} Deputy Blanc testified that he was not able to reach his firearm and decided to drive away from the area and drove south on Allen Avenue. He testified that the Dodge Ram started following him down Allen Avenue and that when he pulled out onto Cleveland Avenue, the vehicle pulled up beside him. Blanc testified that he slammed on his brakes and heard three gunshots coming from the Dodge Ram as it went past him. He then turned into a Taco Bell lot to retrieve his gun and the Dodge Ram continued past him north on Cleveland Avenue. According to Deputy Blanc, an individual who was waiting in the Taco Bell line told him that the Dodge Ram turned around southbound and followed him. He then called for back-up assistance. Deputy Blanc next retrieved his firearm and credentials and sat inside the van in the Taco Bell parking lot waiting for the suspect to come around the corner and waiting for Canton police officers to arrive as back-up. The Dodge Ram fled. During the incident, Deputy Blanc was on the phone with Detective Gambs telling him where he was at. Once back-up arrived and he got out of his vehicle, Deputy Blanc noticed that a bullet had struck the B pillar, which is directly behind the driver's shoulder, and the back pillar of the vehicle, which is also on the driver's side. There was testimony at trial that two "ballistic impacts" were found on the van.

{¶11} After the shooting, appellant drove the Dodge Ram to Canal Fulton, Ohio where he abandoned it at Skipco Auto Auctions. Appellant's stepson, who he had called, picked him up and dropped him off at appellant's home in Barberton, Ohio. Two cartridge casings were located on the driver's seat of the Dodge Ram and an unspent bullet (a .380 caliber Hornaday) was on the driver's side door. Thereafter, on April 25, 2017, landscapers found two pistols on Mill Avenue. One was a black Ruger 9 millimeter with an extended clip and the other a silver chrome pistol with no clip. Testing determined that both pistols were operable.

{¶12} At trial, Mike Talkington, a Detective with the Canton Police Department, testified that by using the serial number, manufacturer and caliber of the pistols found by the landscapers, he was able to use a website called eTrace to contact the ATF and traced the silver pistol, a 9 caliber Ruger, to appellant. The website indicted that appellant had purchased the same on December 10, 2015.  He testified that he traced the black pistol to Gina Marie Grippe and that the same had been purchased on January 18, 2017.

{¶13} Larry Mackey, a firearms and fingerprint expert, testified that both guns were operable and he opined that the cartridge casings recovered from appellant's vehicle were fired from the silver pistol. He further testified that a latent fingerprint lifted from one of the pistols belonged to appellant.

{¶14} At trial, appellant testified on his own behalf.  He testified that he was of Eskimo origin and had developed headaches that became unbearable. Appellant further testified that Eskimo elders told him that the seeds of marijuana plants would provide him with some relief. Because he was unable to find anyone to sell him the seeds, appellant decided to grow the marijuana located in the building to help his health condition.  He

testified that surgery was not an option because Eskimos did not believe in it. Appellant, when asked, testified that he did not intend to sell any of the marijuana, but wanted to eat the seeds to help him.

{¶15} Appellant further testified that the FoodSaver found in the building was not used to package or vacuum seal marijuana, but was used when he went to a local fishery to get fish guts to be mixed in with the fertilizer.

{¶16} When questioned about the events of April 12, 2017, appellant testified that when he went to the building, he could tell that something was "kind of odd." Trial Transcript at 541. He testified that after unlocking the door to the building, he realized that something was wrong because the dog did not come running and there was "stuff thrown everywhere." Trial Transcript at 542.  He saw a little pile of blood with what appeared to be the dog's footprints in it and panicked. Appellant testified that he saw the note left by the Detective which was pinned to the door with a knife and read it. When asked, he testified that at that point, he did not have any idea that the police were involved and did not see any business card or anything else left behind.  He further testified that he did not see the search warrant and a copy of the affidavit and that if they had been left there, he would have seen them.

{¶17} Appellant testified that he then called the number on the note twice, but no one answered.  When he exited the building, appellant saw a van. He testified that the van took off towards him and that he had to jump out of the way. Appellant testified that he did not have his gun drawn and did not have his gun on his person at this time. Appellant, who was fearful and had no idea the driver of the van was a police officer, got into his truck to follow the van in order to get the license plate number.  He testified that

he caught up to the van on Cleveland Avenue and pulled up next to it. The following is an excerpt from appellant's testimony at trial:

{¶18} A: He's in the, the slow lane, what I call the slow lane, the right lane.

{¶19} And, ah, just as I - - we get right about the Taco Bell, I was able to see his, part of his tag number and just about the time that I get just the nose of the truck, just about where that sliding door is, I hear gunshots, you know.

{¶20} And at about that time, that's - - I did have my gun sitting right there. And usually I don't even carry a gun. I don't know why I even had it that night, but I did have it.

{¶21} Q: The, the silver one?

{¶22} A: Yes, sir.

{¶23} Q: That we saw earlier?

{¶24} A: Yes, sir.

{¶25} Q: Okay.

{¶26} A: And, ah - - and I, I fired back twice.

You know, he fired at me and I fired back. So.

{¶27} Trial Transcript at 551-552.

{¶28} Appellant testified that he was afraid that someone was chasing him and might pose a danger to his family, so he did not want to park his vehicle in front of his house. He testified that he called his stepson and asked him to meet appellant at Skipco Auto Auction and give appellant a ride home. Appellant testified that he left his vehicle at Skipco and his stepson dropped him off at his home in Barberton, Ohio. According to

appellant, he left both his silver pistol and his black pistol inside the vehicle and never discarded them on the side of the road.

{¶29} At the conclusion of the testimony and the end of deliberations, the jury, on August 31, 2017, found appellant guilty of all of the counts and specifications with the exception that the jury was unable to reach a verdict on Count Four, trafficking marijuana, and the trial court declared a mistrial as to that count. At the request of appellee, a nolle proesequi was entered on such count on September 20, 2017. As memorialized in an Entry filed on September 20, 2017, appellant was sentenced to eleven (11) years in prison for the charge of felonious assault (Count One) and to three (3) years in prison for the accompanying firearm specification pursuant to R.C. 2941.145. The trial court ordered that the two run consecutively. Appellant also was sentenced to five (5) years in prison for discharging a firearm from a motor vehicle, to be served consecutive with Count One. The trial court merged the firearm specification pursuant to R.C. 2941.1412 as contained in Count One into the specification of discharging a firearm from a motor vehicle as contained in Count One. Appellant also was sentenced to eight (8) years in prison on the charge of possession of marijuana (Count Two) and the trial court merged Count Three with Count Two. The trial court also merged Count Five with Count One. The trial court also sentenced appellant to twelve (12) months in prison for the charge of improperly handling firearms in a motor vehicle as contained in Count Six and ordered that appellant serve Count Two consecutive with Count One and Count Six concurrent with Count One. Appellant was sentenced to a total prison term of 27 years.

{¶30} Appellant now raises the following assignments of error on appeal:

{¶31} "I. THE TRIAL COURT ERRED WHEN IT ORDERED APPELLANT TO SERVE HIS FIREARM SPECIFICATION CONSECUTIVELY WITH HIS DISCHARGING A FIREARM FROM A MOTOR VEHICLE SPECIFICATION."

{¶32} "II. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY ON FLIGHT."

I

{¶33} Appellant, in his first assignment of error, argues that the trial court erred when it ordered appellant to serve the three (3) year sentence for the firearm specification and the five (5) year sentence for discharging firearms from motor vehicle specification consecutively. Appellant contends that that trial court should have run the sentences concurrently because they involve the same act or transaction.

{¶34} Our review of appellant's challenge to his sentence is limited to determining whether his sentence is clear and convincing contrary to law as measured against the evidence in the record. R.C. 2953.08(G)(2); *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7.

{¶35} A trial court is required to impose a three year prison sentence when the offender is convicted of displaying, brandishing, or using a firearm to facilitate the offense. (R.C. 2941.145) and a five year prison sentence when an offender is convicted of discharging a firearm from a motor vehicle (R.C. 2941.146).

{¶36} R.C. 2929.14(B)(1) states, in relevant part, as follows:

b) If a court imposes a prison term on an offender under division (B)(1)(a) of this section, the prison term shall not be reduced pursuant to section 2967.19, section 2929.20, section 2967.193, or any other provision

of Chapter 2967. or Chapter 5120. of the Revised Code. Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

**{¶37}** R.C. 2929.14(B)(1) further states, in relevant part,  as follows:

(c)(i) Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a violation of section 2923.161 of the Revised Code or to a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, also is convicted of or pleads guilty to a specification of the type described in division (A) of section 2941.146 of the Revised Code that charges the offender with committing the offense by discharging a firearm from a motor vehicle other than a manufactured home, the court, after imposing a prison term on the offender for the violation of section 2923.161 of the Revised Code or for the other felony offense under division (A), (B)(2), or (B)(3) of this section, shall impose an additional prison term of five years upon the offender that shall not be reduced pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code.

**{¶38}** In addition, R.C. 2929.14(C)(1) states as follows:

(C)(1)(a) Subject to division (C)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under

the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

**{¶39}** Appellant, in the case sub judice, was charged with felonious assault in Count One of the indictment. The first specification to Count One of the indictment charged defendant with having a firearm on or about his person or under his control while committing the felonious assault, in violation of R.C. 2941.145. The second specification charged defendant with committing the felonious assault offense by discharging a firearm from a motor vehicle, in violation of R.C. 2941.146. The third specification is not at issue in this case.

**{¶40}** In *State v. Phillips*, 8th Dist. Cuyahoga No. 96329, 2012-Ohio-473, the defendant was found guilty of multiple counts of attempted murder, felonious assault, attempted felonious assault, and two counts of inducing panic. The jury also found the defendant guilty of firearm specifications included in the attempted murder, felonious

assault, and attempted felonious assault counts. The trial court sentenced the defendant to a total of 92 years' incarceration.

**{¶41}** The defendant then appealed, arguing, in part, that trial court unconstitutionally subjected him to multiple sentences by imposing multiple firearm specifications and ordering them to be served consecutively. The court, in *Phillips*, held in relevant part as follows at paragraph 38:

> Additionally, cumulative sentences for three- and five-year firearm specifications are permitted in an attempted murder case where gunshots are fired from a moving vehicle. R.C. 2929.14(D)(1)(b). The specifications prohibit different activity and require different proof, thus imposing different penalties. *State v. Walker,* 2d Dist. No. 17678, 2000 WL 873222 (June 30, 2000). As such, Phillips could be sentenced to an additional three, plus an additional five years, for a total of eight years for the firearm specifications in Counts 1, 2, 3, and 4.

**{¶42}** In *State v. Sheffey,* 8th Dist. Cuyahoga No. 98944, 2013–Ohio–2463, the defendant was indicted on four counts of felonious assault and one count of improperly discharging into habitation, one count of having weapons under disability, and one count of criminal damaging. The felonious assault and improperly discharging into habitation counts each carried one- and three-year firearm specifications. They further carried a five-year specification for a "drive-by shooting."

**{¶43}** After the jury found him guilty and the defendant was sentenced to a total of fourteen years in prison, the defendant appealed, arguing, in part, that the trial court should have merged all the firearm specifications that stemmed from the drive-by

shooting. In affirming the sentence, the court, in *Sheffey*, stated, in relevant part, at paragraphs 26-29:

> Although not subject to R.C. 2941.25, firearm specifications may be subject to merger under R.C. 2929.14. We review Sheffey's challenge of the trial court's imposition of multiple firearm specifications to determine whether it is contrary to law. *See* R.C. 2953.08. Applying that standard, we find that the trial court's imposition of the firearm specifications complies with R.C. 2929.14.

> Ordinarily, the court is forbidden from imposing sentence on multiple firearm specifications for "felonies committed as part of the same act or transaction." R.C 2929.14(B)(1)(b). However, this section applies only to the extent that R.C. 2929.14(B)(1)(g) does not apply, which states:

If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

In this case, Sheffey was found guilty of committing two or more felonies. Four of those felonies were felonious assault, and he was found guilty of firearm specifications under R.C. 2929.14(B)(1)(a). Under R.C. 2929.14(B)(1)(g), the court was required to impose on Sheffey prison terms for the two most serious specifications stated in (B)(1)(a), and could also, in its discretion, impose sentence for any other specifications. *See State v. Cassano,* 8th Dist. No. 97228, 2012–Ohio–4047, ¶ 34; *State v. Worth,* 10th Dist. No. 10AP–1125, 2012–Ohio–666, ¶ 96; *State v. Beatty–Jones,* 2d Dist. No. 24245, 2011–Ohio–3719, ¶ 16; *see also State v. Isreal,* 12th Dist. No. CA2011–11–115, 2012–Ohio–4876, ¶ 73 (recognizing that R.C. 2929.14(B)(1)(g) "serves as an exception to the rule that multiple firearm specifications must be merged for purposes of sentencing when the predicate offenses were committed as a single criminal transaction").

Here, the trial court properly sentenced Sheffey on two of the three-year firearm specifications attached to the felonious assault counts as required under R.C. 2929.14(B)(1)(g). The trial court also properly imposed a five-year mandatory prison term pursuant to the firearm specification in R.C. 2941.146, also attached to the felonious assault counts. To the extent that the trial court did not merge the three- and five-year firearm specifications on one of the felonious assault counts, it was not required to do so. Indeed, under R.C. 2929.14(B)(1)(c), "if an offense is properly accompanied with a specification under R.C. 2941 .146 and another under 2941.145, there is no merger of the specifications, and the court must

impose a sentence for each." *State v. Coffman,* 10th Dist. No. 09AP727, 2010–Ohio–1995, ¶ 11; *see also State v. Walker,* 2d Dist. No. 17678, 2000 Ohio App. LEXIS 2952 (June 30, 2000).

**{¶44}** See also *State v. Bates*, 10th Dist. Franklin No. 03-AP-893, 2004-Ohio-4224. In such case, Bates was convicted of one count of murder in violation of Ohio Revised Code Section 2903.02, two firearm specifications in violation of Ohio Revised Code Section 2941.146, and one count of displaying, brandishing, indicating possession of or using a firearm in the commission of an offense in violation of Ohio Revised Code Section 2941.145. He was sentenced to consecutive terms of 15 years to life for the murder, 5 years for discharging a firearm while inside a motor vehicle, and 3 years for displaying, brandishing, indicating possession of or using a firearm in the commission of an offense, for an aggregate term of 23 years to life imprisonment.

**{¶45}** Bates then appealed his sentences on the firearm specifications, arguing that the trial court should have merged the two firearm specifications before sentencing him. The Ohio Court of Appeals for the Tenth Appellate District, in *Bates*, issued a decision affirming the consecutive sentences. In doing so, the court cited R.C. 2929.14 and the holding in *State v. Gresham,* 8th Dist. Cuyahoga App. No. 81250, 2003-Ohio-744, at ¶ 14 ("[I]t is clear that the legislature intended to cumulate the mandatory prison terms contained in R.C. 2941.141 and 2941.145, on the one hand, and R.C. 2941.146, and to require them to be served consecutively to one another and to the prison terms for the base offense."). See also *State v. Mhoon*, 8th Dist. Cuyahoga No. 98832, 2013-Ohio-2090 and *State v. Rice,* 10th Dist. Franklin No. No. 11AP–199, 2011-Ohio-6562 at paragraph 30  In which the court held, in relevant part, as follows**:**

As this court noted in *State v. Coffman,* 10th Dist. No. 09AP–727, 2010–Ohio–1995, former R.C. 2929.14(D)(1)(c), effective at the time of defendant's sentencing, governed defendant's R.C. 2941.146 specification for discharging a firearm from a motor vehicle, while R.C. 2929.14(D)(1)(a) governed sentencing on the firearm specification under R.C. 2941.145. See 2011 H.B. 86. In resolving the same argument in *Coffman,* this court concluded that "if an offense is properly accompanied with a specification under R.C. 2941.146 and another under 2941.145, there is no merger of the specifications, and the court must impose a sentence for each." *Id.* at ¶ 11, citing *State v. Bates,* 10th Dist. No. 03AP–893, 2004–Ohio–4224, ¶ 8, 10. Moreover, the court noted, R.C. 2929.14(E)(1)(a) requires that the terms be served consecutively. *Id.,* citing *Bates* at ¶ 9–10.

**{¶46}** See also *State v. Fant,* 2016-Ohio-7429, 76 N.E.3d 518, (7th Dist.) in which the court held as follows at paragraph 59:

The General Assembly has articulated the policy determination in R.C. 2929.14 that the firearm specifications in R.C. 2914.145 and R.C. 2929.146 shall have mandatory sentences and shall be served consecutively to each other and the underlying offense. Under R.C. 2929.14, trial court's do not have any discretion regarding consecutive sentences for these firearm specifications; they are statutorily mandated to impose consecutive sentences for the underlying offenses and these specifications.

**{¶47}** Based on the foregoing, we find that the trial court did not err in ordering appellant to serve his firearm specifications consecutively. The trial court was precluded, pursuant to R.C. 2929.14(B)(1)(c) and(C)(1)(a), from merging the three-year and five-year firearm specifications.

**{¶48}** Appellant's first assignment of error is, therefore, overruled,

II

**{¶49}** Appellant, in his second assignment of error, maintains that the trial court erred by instructing the jury on flight.

**{¶50}** It is well established that evidence of flight is admissible, as it tends to show consciousness of guilt. *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 20 L.Ed.2d 917(1967). Further, a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. *See United States v. Dillon*, 870 F.2d 1125 (6th Cir.1989). The decision whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Sims*, 13 Ohio App.3d 287, 289, 469 N.E.2d 554(1st Dist.1984). Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140(1983).

**{¶51}** In the case sub judice, the trial court instructed the jury as follows (Trial Transcript, Volume 4 at 24-25:

> Testimony has been admitted indicating the Defendant fled the scene. You are instructed that flight alone does not raise a presumption of guilt, but it may tend to indicate the Defendant's consciousness or aware

(sic) of guilt. If you find that the facts do not support that the Defendant fled the scene, or if you find that some other motive prompted the Defendant's conduct, or if you are unable to decide what the Defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the Defendant engaged in such conduct and if you decide the Defendant was motivated by a consciousness or an awareness of guilt, you may, but are not required to, consider that evidence in deciding whether the Defendant is guilty of the crimes charged. You alone will determine what weight, if any, is (sic) to give to the evidence.

**{¶52}** Flight from justice "means some escape or affirmative attempt to avoid apprehension." *State v. Wesley,* 8th Dist. Cuyahoga App. No. 80684, 2002- Ohio-4429 at paragraph 19, citing *United States v. Felix–Gutierrez* (C.A.9, 1991), 940 F.2d 1200, 1207.

**{¶53}** We note that appellant did not object to this instruction at the time that it was given, but did object to a jury instruction on flight when, at the beginning of the trial, the State moved to admit a jury instruction on flight.

**{¶54}** While appellant contends that the evidence adduced at trial did not substantiate a flight instruction, we disagree. As is stated above, testimony was adduced at trial that appellant, after pursuing Deputy Blanc in his Dodge Ram truck, took his truck to Skipco Auto Auctions in Canal Fulton and abandoned it there. He had, according to the evidence disposed of his two firearms on the side of Mill Street, and, after abandoning his truck, had called his stepson and had him drive appellant to his home in Barberton, Ohio where he remained until his arrest. As noted by appellee, "[t]he evidence demonstrated

that [appellant] deliberately fled the area, disposed of his truck, disposed to two firearms all in an attempt to avoid arrest or detention."

**{¶55}** Based on the foregoing, we find that the trial court did not abuse its discretion in giving an instruction on flight. The trial court's decision was not arbitrary, unreasonable or unconscionable.

**{¶56}** Appellant's second assignment of error is, therefore, overruled.

**{¶57}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Delaney, J. concur.