[Cite as *State v. Rulong*, 2020-Ohio-4022.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-T-0055** |
| RYAN NEIL RULONG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2019 CR 00431.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Scala*, 244 Seneca Avenue, N.E., P.O. Box 4306, Warren, OH 44482 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}   Appellant, Ryan Neil Rulong, appeals from the judgment entry of sentence issued by the Trumbull County Court of Common Pleas on August 2, 2019.  The trial court sentenced appellant to an indefinite prison term of 39 to 40 and one-half years for offenses and specifications that stemmed from a drive-by shooting of an occupied bar and an armed robbery of a gas station.  Finding his arguments on appeal without merit, the judgment is affirmed.

**Procedural History**

{¶2} On May 23, 2019, the Trumbull County Grand Jury presented a seventeen-count indictment against appellant, to wit:

> Counts One through Eight: Attempted Murder (F1), in violation of R.C. 2923.02(A)&(E)(1) and 2903.02(A)&(D), each count carrying two firearm specifications under R.C. 2941.145 and 2941.146;

> Counts Nine through Sixteen: Felonious Assault (F2), in violation of R.C. 2903.11(A)(2)&(D)(1)(a), each count carrying two firearm specifications under R.C. 2941.145 and 2941.146;

> Count Seventeen: Aggravated Robbery (F1), in violation of R.C. 2911.01(A)(1)&(C), with one firearm specification under R.C. 2941.145.

At arraignment, bond was set at $750,000.00 cash or surety.

{¶3} Counts One through Sixteen stem from a drive-by shooting of the occupied University at Larchmont bar in the city of Warren on May 10, 2019. Count Seventeen stems from an armed robbery of the True North gas station in Howland Township that occurred four days later, on May 14, 2019. Following his arrest, appellant was Mirandized and eventually admitted to police that he was involved in both incidents.

{¶4} A jury trial was scheduled for July 15, 2019.

{¶5} At a pre-trial held June 27, 2019, appellant orally moved for a continuance. The prosecution indicated the trial must be had by August 10, 2019, pursuant to appellant's statutory right to a speedy trial. The trial court granted a continuance within that time frame.

{¶6} Trial was rescheduled for July 29, 2019. The trial court stated, "[t]hat date will be set in stone, counsel. That will not be continued for any reason."

2

{¶7}   On July 16, 2019, appellant filed a motion for relief from prejudicial joinder. Specifically, appellant requested a separate trial for Count Seventeen, the Aggravated Robbery charge.  The state filed a response in opposition to the request for a separate trial.  Appellant also filed a motion for competency exam, requesting evaluation of his competency to stand trial.

{¶8}   A motion hearing was held July 18, 2019.  Defense counsel orally moved for another continuance of trial on the basis that the prosecutor had turned over additional discovery the day prior.  The trial court denied all three motions.

{¶9}   The trial court issued a judgment entry to this effect on July 23, 2019.  The court found "no prejudice to the Defendant in trying all counts in the same jury trial" because he "was indicted in one indictment, used the same gun in both crimes, evidence from both crimes were found at the same time, has the same officers involved in both cases, has common facts to both events and the events were close enough together in time[.]"

{¶10}   Further, the trial court found "no sufficient indicia of incompetency to justify the ordering of a competency evaluation."   "Despite the Defendant's mental illness diagnoses," the court stated, "nothing about his courtroom demeanor or ability to participate in the trial raised sufficient doubt regarding his ability to understand the proceedings or assist with his own defense."

{¶11}   Finally, the trial court found "no good cause exists to continue the matter, which had already been continued from July 15, 2019," because "[t]he additional discovery consists of pictures and videos and poses no additional burden in preparing for trial."

{¶12} Defense counsel submitted Proposed Jury Instructions, on which the trial court reserved its ruling until trial. The trial court ordered the matter to proceed to trial without delay.

{¶13} On July 29, 2019, the morning of trial, the state filed a motion to amend the indictment pursuant to Crim.R. 7(D), submitting that Counts One through Eight of the indictment should not have included the *mens rea* of "knowingly" for Attempted Murder. Defense counsel did not object. The motion was granted, and the indictment was amended to reflect the *mens rea* of "purposely."

{¶14} Defense counsel again orally moved for a continuance, which the trial court overruled. The matter proceeded to trial, where the following testimony was adduced. Surveillance video was also submitted to the court and viewed by the jury.

**Testimony**

{¶15} On Friday evening, May 10, 2019, appellant was patronizing the University at Larchmont Bar ("the UAL") located at 1706 Larchmont Avenue in the city of Warren, Ohio. The bar was busy. Richard Rolfe, a co-owner of the UAL, told appellant to remove his feet from two bar stools. Appellant had a few drinks and then went outside to the patio.

{¶16} Two men were smoking on the patio. Appellant attempted to jump the fence but tripped and fell on his face. Appellant began to walk away with his beer, but one of the men told appellant he could not take his beer out of the fenced area. Appellant smashed his beer bottle on the ground as he walked across the street, and words were exchanged. The man told appellant to clean it up, appellant refused, and the man told appellant to leave and not come back. Appellant left and walked to a

4

nearby residence. The two men later saw appellant drive past the UAL in an old white Ford truck.

{¶17} Sometime just before 10:00 p.m., several bullets were fired into the bar. Three women who were smoking outside on the patio saw a white truck outside the bar when the gun shots started. The door to the bar was shattered. One patron was hit with something on the side of his head, his eye filled with blood, and he fell to the floor. The three women ran inside from the patio. A short time later, several more bullets were fired into the bar. Two other patrons were struck with shrapnel, debris, and glass.

{¶18} The detectives dispatched to the scene found three projectiles that night: one underneath a bar stool, one in the exterior west wall of the bar, and one outside in the street. The bar owner later turned in a fourth projectile he had found on the patio.

{¶19} Detective Laprocina testified that at least eight projectiles were fired into the bar. At least one bullet went through the front window, three were found in the masonry, at least three were stuck in the front door or framing, and two struck near a window of a second story apartment.

{¶20} The following morning, the bar owner found more bullet impacts on the north and south sides of the building. He testified that at least thirteen projectiles had been fired at the bar.

{¶21} Detective Marsico reviewed the bar's surveillance video and determined to which residence appellant walked when he left the bar earlier that evening. The detective drove past the residence and saw a white pickup truck in the driveway that matched the description of the vehicle seen at the time of the shooting. Appellant was not arrested at that time.

{¶22} Four days later, on May 14, 2019, the True North gas station located on East Market Street in Howland Township, Ohio, was robbed at gunpoint. A man entered the station wearing a hooded sweatshirt, mask, and dark goggles. He pointed a firearm at the clerk and ordered her to "give me everything you have." The man left with the cash from the drawer, approximately $192.00, and fled in a truck.

{¶23} An employee and a customer called 911. Two customers identified appellant's vehicle as the truck involved in the robbery. One stated it was a white Ford F-150 pickup truck with blue duct tape covering the license plates. The other described the truck as white with multi-colored spray paint.

{¶24} Officer Bowker headed toward the gas station and observed a vehicle matching the description—an old Ford F-150 with orange and black paint and purple duct tape covering the license plate. The officer initiated a traffic stop. When additional officers arrived, appellant was taken into custody without incident. Officer Bowker observed, in plain view inside the vehicle, the handle of a firearm, a ski mask, a pair of gloves, and a bag consistent with a description of the one used during the robbery.

{¶25} Detective Sean Stephens, who reported to the gas station, indicated appellant matched descriptions of the individual involved in the robbery as well as a photograph recovered from the gas station's surveillance video.

{¶26} The firearm recovered from appellant's vehicle was a Sturm Ruger P90 .45 caliber semiautomatic handgun. Inside appellant's pockets at the time of his arrest were a yellow container with three spent .45 caliber casings and $206.00 in cash.

{¶27} At the police department, appellant waived his *Miranda* rights and gave a video and audio recorded statement to a Howland Township detective and a Warren

6

City detective. Appellant eventually admitted robbing the True North gas station with an unloaded gun and shooting at the UAL. He admitted to shooting two loaded magazines at the bar, each of which held eight projectiles.

{¶28} Detectives obtained a search warrant for an apartment in Girard, where detectives located a 9mm pistol, a box of ammunition, a magazine, and a barrel extension. A local pawn broker had sold appellant two firearms on April 19, 2019: a Masterpiece 9mm pistol and a Ruger Model P90 .45 caliber pistol. The serial numbers matched the numbers on the firearms recovered from appellant's vehicle and apartment.

{¶29} A forensic scientist with BCI determined the projectiles found at the UAL were fired from both of these firearms. The cartridge casings found in appellant's pockets were from the .45 caliber firearm. Another forensic scientist with BCI found DNA consistent with appellant's profile on the trigger, handle, magazine, and barrel extension of the 9mm pistol, with statistical probabilities of 1 in 5 billion and 1 in 5 trillion random people.

**Conviction**

{¶30} On July 31, 2019, the jury found appellant guilty of all seventeen counts and accompanying firearm specifications.

{¶31} Defense counsel filed a sentencing memorandum, providing exhibits to the trial court in support of mitigation due to appellant's mental illness diagnoses.

{¶32} A sentencing hearing was held August 2, 2019. The state stipulated that Counts One through Eight merged with Counts Nine through Sixteen for purposes of sentencing and elected to proceed on Counts One through Eight and the accompanying

7

firearm specifications. The trial court sentenced appellant to a total aggregate prison term of 39 to 40 and one-half years.

{¶33} The trial court imposed the following sentences on the underlying offenses:

<u>Count One</u>: indefinite 3 to 4 and one-half years, consecutive to all other counts;

<u>Counts Two and Three</u>: 3 years on each, consecutive to each other and to Count One;

<u>Counts Four, Five, Six, Seven, and Eight</u>: 3 years on each, concurrent to each other and concurrent to all other counts;

<u>Count Seventeen</u>: 3 years, consecutive to all other counts.

{¶34} Counts One through Eight each had two firearm specifications. The trial court sentenced appellant to 3 years mandatory for the first specification on each count and 5 years mandatory for the second specification on each count. The trial court found that Counts One, Two, and Three involved three different victims and were committed with a separate animus. Thus, the sentences imposed on the specifications for Counts One, Two, and Three were ordered to be served consecutively to each other and prior to the sentences imposed on the underlying offenses. The sentences imposed on the specifications for Counts Four, Five, Six, Seven, and Eight were ordered to be served concurrently to each other and concurrently to the other specifications.

{¶35} Count Seventeen had one firearm specification. The trial court sentenced appellant to 3 years mandatory for the specification, to be served consecutively to the terms imposed on all other specifications. These specification sentences amount to an aggregate 27 years mandatory, to be served consecutively and prior to the sentences imposed on the underlying offenses.

8

{¶36} The trial court's entry on sentence was issued August 19, 2019.

## Assignments of Error

{¶37} Appellant noticed this appeal and raises seven assignments of error for our review:

> [1.] The Trial Court erred, to the detriment of Appellant, by failing to grant Appellant reasonable time to prepare for trial.
>
> [2.] The Trial Court erred, to the detriment of Appellant, by failing to give Appellant a competency exam.
>
> [3.] The Trial Court erred, to the detriment of Appellant, by finding a separate animus for three sets of gun specifications instead of one total set.
>
> [4.] The Trial Court erred, to the detriment of Appellant, by "stacking" the 5 year prison term gun specification for shooting from a motor vehicle to the 3 year prison term for the use of a gun in a crime.
>
> [5.] The Trial Court erred, to the detriment of Appellant, by making the 17 counts consecutive and given [sic] the maximum sentence to Count 17.
>
> [6.] The Trial Court erred, to the detriment of Appellant, by failing to give a directed verdict of acquittal for Counts 1 – 7 Attempted Murder.
>
> [7.] The Trial Court erred, to the detriment of Appellant, by failing to give the jury an instruction on Negligent Assault (O.R.C. 2903.14).

## Pre-Trial

### Motion to Continue Trial

{¶38} Under his first assigned error, appellant argues the trial court erred by denying him a continuance of trial, thereby depriving defense counsel of a reasonable amount of time to prepare.

9

{¶39} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981) (citations omitted).

{¶40} "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Id.*, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "In determining whether the trial court abused its discretion, a reviewing court must weigh the potential prejudice to the defendant against the trial court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. McDade*, 11th Dist. Lake No. 97-L-059, 1998 WL 682360, *7 (Sept. 25, 1998), citing *State v. Powell*, 49 Ohio St.3d 255, 259 (1990).

{¶41} Appellant contends the trial court's refusal to grant additional time for trial preparation was an abuse of discretion due to the gravity and number of charges against him, appellant's mental health, and the fact that the state released discovery over time. Appellant contends on appeal that he offered to waive his right to a speedy trial in order to accommodate his requests, but there is no indication in the record that he ever waived or offered to waive this right. In fact, it appears from the following colloquy at the close of all evidence that such a waiver was never offered:

> [DEFENSE COUNSEL]: Your Honor, also, I would like the Court to take judicial notice of the date of the indictment, May 23rd, I would like to use that in my closing.
>
> THE COURT: The date of the indictment? * * * For what purpose?

[DEFENSE COUNSEL]: To show the haste involved in this matter.

THE COURT: Denied. Your client has a right to speedy trial. He did not waive. He had to be tried within 90 days of being arrested, which would have expired in a couple weeks. And the Court accommodated a speedy schedule. You're instructed – you're not allowed to make any argument on how fast this thing came to trial because that's as a result of you and your client, nobody else.

[DEFENSE COUNSEL]: Thank you.

{¶42} "It is a basic due process right and indeed essential to a fair trial that a defense counsel be afforded the reasonable opportunity to prepare his case." *State v. Sowders*, 4 Ohio St.3d 143, 144 (1983) (citations omitted). However, jailed defendants also have a statutory right to be brought to trial within 90 days of arrest. R.C. 2945.71(C)(2)&(E).

{¶43} Trial was set for the latest available date on the court's docket prior to the speedy trial clock running out. Because appellant did not waive his right to a speedy trial, preparation for trial was necessarily hastened for both the defense and the prosecution. We have not been given any reason to conclude, however, that appellant was prejudiced by the court's refusal to continue the trial date. Nothing in the record indicates the trial court's decision was made arbitrarily, unreasonably, or unconscionably.

{¶44} Appellant's first assignment of error is without merit.

Motion for Competency Evaluation

{¶45} Under his second assigned error, appellant argues the trial court erred by denying his request for a competency evaluation and by failing to hold a competency hearing before doing so.

11

{¶46} "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). The court must find by a preponderance of the evidence that the defendant is incompetent to stand trial. *Id.* The test for incompetency to stand trial is whether, "because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense[.]" *Id.*

{¶47} A defendant has a fundamental due process right not to be tried or convicted while incompetent. *State v. Were*, 94 Ohio St.3d 173, 174 (2002). In Ohio, this right is protected by R.C. 2945.37. When the issue of defendant's competence to stand trial is raised before the trial has commenced, "the court *shall* hold a hearing on the issue." R.C. 2945.37(B) (emphasis added). At the hearing, "[t]he prosecutor and defense counsel may submit evidence on the issue of the defendant's competence to stand trial." R.C. 2945.37(E).

{¶48} "Thus, there is no question that where the issue of the defendant's competency to stand trial is raised prior to the trial, a competency hearing is mandatory." *State v. Bock*, 28 Ohio St.3d 108, 109 (1986). Nevertheless, "the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *Id.* at 110, following *Pate v. Robinson*, 383 U.S. 375 (1966) and *Drope v. Missouri*, 420 U.S. 162 (1975). *Accord State v. Hackathorn*, 11th Dist. Ashtabula No. 2004-A-0008, 2004-Ohio-6694, ¶29, and *State v. Bekesz*, 75 Ohio App.3d 436, 441 (11th Dist.1991).

{¶49} On July 16, 2019, defense counsel filed a Motion for Competency Exam. In support, counsel stated that appellant has been on medication since he was a child

12

for "severe and persistent mental illness" and attached a summary outlining appellant's diagnosis of schizoaffective disorder, bipolar type, which causes him to have depression, anxiety, panic attacks, auditory hallucinations, and paranoia. Counsel further stated these issues persist and that the jail medical staff had altered appellant's medication in kind and dosage. Counsel indicated he had seen a continuous decline in appellant's overall mental state, which he felt jeopardized his ability to defend appellant's case.

{¶50} On July 18, 2019, a motion hearing was held, at which the Motion for Competency Exam was discussed. The trial court heard from defense counsel and engaged in a lengthy colloquy with appellant.

{¶51} Appellant contends this hearing was not in compliance with the statute and that the trial court merely conducted its own inquiry with mostly leading questions. He argues the statute requires the court to hold an "actual hearing on the matter, not simply respond to the motion that was filed, as the court did in this case without an actual hearing upon proper notice to the appellant."

{¶52} We disagree and conclude that the trial court did comply with the statute. Appellant was provided notice of the July 18, 2019 motion hearing, which was held two days after he filed the request for a competency exam. Appellant was represented by counsel, who did not raise an objection or request a separate hearing at that time. The trial court did not prevent any evidence or argument concerning the issue of competency. It has been held, in fact, that the language of R.C. 2945.37 does not prohibit a competency hearing from occurring even on the same day as or immediately following an oral request for a competency evaluation. *See State v. Austin*, 7th Dist.

13

Mahoning No. 09MA167, 2010-Ohio-6583, ¶34 ("There is nothing in the statute which could be read to indicate that if a competency hearing is requested, that hearing cannot occur on the same day as the request."); *State v. Scott*, 8th Dist. Cuyahoga No. 100980, 2014-Ohio-4925, ¶30-31 ("immediately after the request for [a competency hearing] was made, the trial court provided its analysis and made a finding that the defendant was competent to stand trial"); *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶13-14 ("The fact that [the defendant] did not attempt to introduce any evidence in support of his contention that he was incompetent to stand trial does not mean that he was precluded from doing so.").

{¶53} The trial court determined at this hearing that appellant was competent to stand trial because he was clearly able to understand and said he would cooperate with his attorney. The court acknowledged appellant's mental illness diagnosis but stated that does not necessarily mean he is incompetent to stand trial. The court did not hear one thing during the colloquy that gave any indication appellant was incompetent to stand trial.

{¶54} Thus, the trial court denied the request for a competency evaluation, which was a decision within its discretion. *See* R.C. 2945.371(A); *Smith, supra,* at ¶10; and *Scott, supra,* at ¶27. We find no basis upon which to conclude the trial court abused its discretion in this regard.

{¶55} "We must give deference on these issues to those 'who see and hear what goes on in the courtroom.'" *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, ¶62, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999). "A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the

14

charges against him and of assisting his counsel." *Bock, supra*, at 110; *see also* R.C.2945.37(F). Nothing in the record indicates otherwise.

{¶56} Appellant's second assignment of error is without merit.

**Trial**

<u>Motion for Acquittal</u>

{¶57} Under his sixth assigned error, appellant argues the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal as to each count of Attempted Murder.

{¶58} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A).

{¶59} Crim.R. 29(A) requires the trial court to grant a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offense(s). "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick,* 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶60} "With respect to sufficiency of the evidence, '"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In

15

addition, a conviction based on legally insufficient evidence constitutes a denial of due process." *Id.* at 386-387, citing *State v. Robinson*, 162 Ohio St. 486 (1955) and *Tibbs v. Florida*, 457 U.S. 31, 45 (1982). We review whether the evidence is legally sufficient to sustain a verdict de novo. *Id.* at 386.

{¶61} Appellant was charged with and convicted of eight counts of Attempted Murder. In order to prove appellant was guilty of Attempted Murder, the state had to prove beyond a reasonable doubt that appellant engaged in conduct that, if successful, would result in purposely causing the death of another. R.C. 2923.02(A) & 2903.02(A); *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, ¶23.

{¶62} Appellant first argues there was insufficient evidence to prove that he acted "purposely" because he could not see inside the bar from the street and had no knowledge of who was or was not in the bar at the time of the shooting.

{¶63} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶143, quoting *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978).

{¶64} Thus, "[t]he element of purpose required by R.C. 2903.02 may be presumed where the natural and probable consequences of a wrongful act are to produce death." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *State v. Robinson*, 161 Ohio St. 213 (1954), paragraph five of the syllabus. A specific intent to

16

commit murder may reasonably be inferred from "the fact that a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death[.]" *State v. Widner*, 69 Ohio St.2d 267, 270 (1982) (citation omitted).

{¶65} Here, appellant admitted to the police that he had been in the bar earlier that evening and that when he returned in his truck, he fired multiple bullets into a bar he knew to be open and occupied. He also knew there were patrons outside on the patio. Appellant drove past the bar, shooting two waves of bullets from two different firearms. Because death was a natural and probable consequence of this act, it was reasonable for the jury to infer an intention to kill. In addition, there was testimony that most of the bullets were found on the first floor of the building, where the bar was located. Thus, the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that appellant attempted to purposely cause the death of another.

{¶66} Appellant next argues there was insufficient evidence to support eight counts of Attempted Murder. This argument is also not well taken. Detective Laprocina testified that at least eight projectiles were fired into the UAL—seven impacted the front of the building, at a reasonable level for someone or something to be hit. The morning after the incident, more bullet impacts were discovered. The UAL's co-owner testified that at least one projectile went through the front window of the bar, three were found in the masonry, two struck near a window of the second story apartment, and at least three more were stuck in the door or door frame. Based on this testimony, there was sufficient evidence for the jury to find appellant guilty of eight counts of Attempted Murder.

17

{¶67} The trial court did not err by denying appellant's Crim.R. 29 motion for judgment of acquittal on the Attempted Murder charges.

{¶68} Appellant's sixth assignment of error is without merit.

Jury Instructions

{¶69} Under his seventh assigned error, appellant argues the trial court erred by denying his request for a jury instruction on a lesser included offense. His assignment of error identifies this request as one for "reckless assault," while his argument identifies the request as one for "negligent assault." Appellant never requested an instruction for either reckless or negligent assault. The reference to the docket in his appellate brief points us to his Proposed Jury Instructions filed prior to trial. In this document, appellant proposed an instruction for "attempted reckless homicide."

{¶70} At a pre-trial motion hearing, the trial court reserved its ruling on appellant's requested jury instruction until trial. Appellant renewed the request at the close of all evidence. The trial court denied the instruction.

{¶71} "The trial court *must* give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶34 (emphasis added); *accord State v. Shane*, 63 Ohio St.3d 630, 632-633 (1992). Instruction on the lesser offense is required where the evidence presented at trial could "'reasonably support *both* an acquittal on the crime charged and a conviction upon the lesser included offense.'" *Id.* at ¶21, quoting *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus (emphasis added). "'[T]he trial court must view the evidence in the light most favorable

18

to the defendant.'" *Id.*, quoting *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶37.

{¶72} Because the trial court engages in an analysis of the sufficiency of the evidence, we review the trial court's denial of a requested jury instruction de novo, as a matter of law, without deference to the trial court. *State v. Harper*, 11th Dist. Trumbull No. 2017-T-0096, 2018-Ohio-2581, ¶58.

{¶73} For the trial court to have granted the request for an instruction on Attempted Reckless Homicide, the evidence must have been sufficient to acquit appellant of Attempted Murder and sufficient to find appellant engaged in conduct that, if successful, would have resulted in recklessly causing the death of another. R.C. 2903.041(A); R.C. 2923.02(A).

{¶74} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶75} Here, the evidence is insufficient to reasonably support a finding that appellant acted recklessly, as opposed to purposely. Appellant retrieved two loaded firearms and drove past the UAL twice while shooting two waves of bullets at the building. He engaged in this conduct knowing the bar was open and occupied and that patrons were outside on the patio. It would be unreasonable to conclude that these actions were merely reckless. Appellant did not disregard a substantial and unjustifiable

19

risk, he intentionally engaged in conduct with a deadly weapon, the use of which was reasonably likely to cause death.

{¶76} The trial court's decision not to instruct the jury on Attempted Reckless Homicide was not error.

{¶77} Appellant's seventh assignment of error is without merit.

**Sentencing**

<u>Firearm Specifications</u>

{¶78} Appellant's next arguments relate to the sentences he received for the firearm specifications on Counts One through Eight. Each count included a firearm specification under R.C. 2941.145(A), which requires a mandatory 3-year prison term if the offender displayed, brandished, indicated possession of, or used a firearm while committing the offense. *See* R.C. 2929.14(B)(1)(a)(ii). Each count also included a specification under R.C. 2941.146(A), which requires a mandatory 5-year prison term if the offender discharged the firearm from a motor vehicle. *See* R.C. 2929.14(B)(1)(c)(i).

{¶79} The trial court found that Counts One, Two, and Three involved three different victims and were committed with a separate animus. The court imposed the mandatory 3-year and 5-year terms for the specifications on each of the three counts, all to be served consecutively to each other, for a total mandatory prison term of 24 years. The court also imposed the mandatory 3-year and 5-year terms for the specifications on Counts Four, Five, Six, Seven, and Eight, ordering them to be served concurrently with each other and concurrently with the specifications on Counts One, Two, and Three.

{¶80} Under his third assigned error, appellant argues the trial court erred by failing to merge the two specifications on each of Counts One, Two, and Three because they all occurred from the same act. Under his fourth assigned error, appellant argues the trial court erred by "stacking" the sentences for the two specifications because they each occurred with the same animus, which subjected him to double jeopardy.

{¶81} Initially, we note that specifications are penalty enhancements, not criminal offenses, and therefore are not subject to the same constitutional or statutory protections against double jeopardy. *See State v. McDivitt,* 11th Dist. Lake No. 2011-L-129, 2012-Ohio-2243, ¶63 ("A firearm specification, though requiring a separate finding from the jury, acts as a sentencing enhancement to a pre-existing offense rather than a separate, respective offense."), citing *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, paragraph two of the syllabus ("Penalties for a specification and its predicate offense do not merge under R.C. 2941.25.").

{¶82} Pursuant to R.C. 2929.14(B)(1)(b) and (c)(iii), the general rule is that "a court shall not impose more than one additional prison term on an offender" for either of the specifications described above "for felonies committed as part of the same act or transaction." An exception is noted in these divisions, however, which is found in R.C. 2929.14(B)(1)(g):

> If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * attempted murder, aggravated robbery, [or] felonious assault, * * * and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * * and, *in its discretion, also may impose on the*

> *offender the prison term specified under that division for any or all of the remaining specifications.*

(Emphasis added.)

{¶83} This has been interpreted to mean that in a case such as this—where appellant was convicted of two or more felonies, including attempted murder and aggravated robbery—the trial court is required to impose additional prison terms for the two most serious specifications under division (B)(1)(a) (i.e., under R.C. 2941.145(A)), and it also has discretion to impose a sentence for any or all other specifications. *See, e.g., State v. Jarmon*, 8th Dist. Cuyahoga No. 106727, 2018-Ohio-4710, ¶31; *State v. Coffman*, 10th Dist. Franklin No. 09AP-727, 2010-Ohio-1995, ¶11; *State v. Ropp*, 2d Dist. Champaign No. 2018-CA-44, 2020-Ohio-824, ¶56-57; *State v. Dixson*, 1st Dist. Hamilton No. C-030227, 2004-Ohio-2575, ¶39; *State v. Welninski*, 6th Dist. Wood Nos. WD-16-039 & WD-16-040, 2018-Ohio-778, ¶104.

{¶84} Thus, as provided in R.C. 2929.14(B)(1)(g), the trial court was required to impose additional prison terms on appellant for two of the R.C. 2941.145 specifications, and it had discretion to impose additional prison terms for all remaining specifications without the need to consider whether the conduct was part of the same act or transaction. The trial court did not err, therefore, in failing to merge the specifications for Counts One, Two, and Three.

{¶85} Further, consecutive sentences are statutorily required in this situation. Pursuant to R.C. 2929.14(C)(1)(a), if a mandatory prison term is imposed upon an offender for either a R.C. 2941.145 specification, a R.C. 2941.146 specification, or both, then "the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division * * *,

22

consecutively to and prior to any prison term imposed for the underlying felony * * *, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender."

{¶86} Thus, the trial court was statutorily mandated to impose the sentences for these firearm specifications to be served consecutively to each other and to the underlying offense—or, as appellant describes it, the trial court was required to "stack" these sentences. *See State v. Fant*, 7th Dist. Mahoning No. 14 MA 0067, 2016-Ohio-7429, ¶58; *State v. Bass*, 10th Dist. Franklin Nos. 14AP-992 & 14AP-993, 2015-Ohio-3979, ¶22-23; *State v. Hill*, 5th Dist. Stark No. 2017CA00183, 2018-Ohio-3901, ¶45-47.

{¶87} Appellant's double jeopardy argument is not well taken. The trial court did not err by failing to merge the specifications or by imposing consecutive sentences for the specifications.

{¶88} Appellant's third and fourth assignments of error are without merit.

<u>Underlying Offenses</u>

{¶89} Finally, under his fifth assigned error, appellant argues the trial court erred by imposing consecutive sentences.

{¶90} The imposition of consecutive sentences is governed by R.C. 2929.14(C)(4):

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶91} An appellate court may increase, reduce, or otherwise modify a felony sentence or may vacate the felony sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4). R.C. 2953.08(G)(2)(a).

{¶92} At appellant's sentencing hearing, the trial court made the following findings:

The Court further finds pursuant to 292[9].14 of the Revised Code that consecutive sentences are necessary to protect the public from future crime by the Defendant, and consecutive sentences are necessary to punish the Defendant. Consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and the clear danger the Defendant poses to the public.

At least two of the offenses were committed as part of one or more courses of conduct. The harm caused by the multiple offenses was so serious that no single prison term for any of the offenses committed adequately reflects the seriousness of the Defendant's criminal conduct.

The Defendant's criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime committed by the Defendant.

These findings were also incorporated into the sentencing entry.

{¶93} Appellant contends the trial court erred because he did not testify at trial and because a pre-sentence investigation was not ordered. The facts of the incident, however, speak for themselves. The trial court did not base its decision on a criminal history, for which a pre-sentence investigation would have been relevant. Rather, the trial court relied on the harm that was caused by appellant's criminal conduct in this matter. The record supports the trial court's findings. Appellant's argument is not well taken.

{¶94} Appellant further argues the trial court erred by relying on R.C. 2929.144 to impose a 13 and one-half years prison term for one count of Aggravated Robbery. This argument is wholly without merit. The trial court sentenced appellant to a 3-year prison term for the Aggravated Robbery count. The aggregate prison sentence for all of appellant's underlying offenses is an indefinite sentence of no less than 12 years and no more than 13 and one-half years.

{¶95} Appellant's fifth assignment of error is without merit.

{¶96} The judgment of the Trumbull County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.